CASE 21—PETITION EQUITY—JUNE 12.

## Rowan's creditors vs. Rowan's heirs.

APPEAL FROM LOUISVILLE CHANCERY COURT.

A devise of real estate to trustees, for the use of the testator's son for life, remainder to the son's children, in fee, with *permission* to the trustees to sell a portion of the estate to pay the son's debts and to buy slaves, gives the creditors of the son no right to subject any portion of the estate to the payment of their claims.

W. R. GRIGSBY for appellants.
.T. A. MARSHALL for appellees.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

John Rowan, sr., among others, made the following devises:

" The balance of my estate is to be proportioned between my four children and two grandchildren, J. R. Steel and Eliza Harney, as equally as practicable according to value. The Federal Hill farm is to be assigned to my son John as part of his allotment; and their respective allotments, when made, are to be held by my trustees in trust for the use of the persons, respectively, during their respective lives; and the part of such of them as die without lawful issue, for the use of the survivors during their respective lives and their lawful issue, respectively, in equal shares, according to value.  *  *  * And my trustees may sell of the ground allotted to each of my daughters and granddaughter, Harney, for their genteel (not extravagant) support and establishment in life, to any amount not exceeding ten thousand dollars, each; *and of my son John's allotment, not exceeding the same amount, to pay his debts and buy slaves.*  *  *  * The balance of their respective portions is, at their respective deaths, to go to their lawful issue, as above stated. *But, upon the death of my son John, his wife living, she is to possess his portion of his life estate, during her widowhood, for the rearing and education of his children; but upon her marriage, the whole of his life estate is to pass to his children in fee, share and share alike, according to value.*"

By the first clause of the will, the testator had devised his entire estate to James Guthrie and Henry Pirtle, as his trustees, for the purposes named in the will. He also appointed these gentlemen his executors.

The various creditors of John Rowan, jr., seek to have ten thousand dollars of his portion assigned to pay his debts, and that it be subjected to the payment of their claims. This John Rowan, jr., and wife resisted, in his lifetime, and claim only a life estate in said property.

The trustees and executors do not assent, but submit the question to the chancellor for advice.

The chancellor decreed a portion to be laid off to John Rowan, jr., for the purpose of paying his debts, and ordered it to be sold for that purpose. This decree was reversed by the appellate court because it was prematurely rendered, it not then appearing that John Rowan's (the testator) creditors

had been paid, nor that there would be any sufficient amount left, after their payment, to answer the purposes of the decree. The court then gave no opinion upon the main question.

After this reversal, and pending the litigation, John Rowan, jr., died, and his children now resist the subjecting any portion of said estate, devised by their grandfather, to the payment of their father's creditors, and the chancellor having dismissed the creditors' suits, they seek a reversal.

It seems to us the testator did not intend absolutely to set aside any portion of his estate to pay his son John's creditors, nor did he express any trust of that kind for his trustees and executors to execute.  He had first devised his whole estate in trust to his said trustees and executors.  He expressly directed that the Federal Hill farm should be allotted to his son John, and that the portions allotted to each of his children and grandchildren should be to them for life, and then to their heirs of testator's blood.  Having done this, he enlarged the powers of the trustees to sell not exceeding ten thousand dollars' worth of the portion assigned his daughters and granddaughter to fit them out in a suitable establishment, and to sell a like amount of the realty allotted to his son John to pay his debts and buy slaves.  But this was for the personal benefit of the devisees, and to depend upon the judgment and agreement of the trustees, and not as a trust for the benefit of the creditors.

The language is not directory, certainly not mandatory, but merely permissive, and it being for the benefit of the devisee, John, he might waive the benefit.  This could be no injury or fraud upon his creditors, for it was a fund upon which they had no legal claim, and to which they could not legally look when the debts were created.  It had been first devised to John for life, and then to his children in fee; and the subsequent permission to the trustees to sell a portion for the payment of John's debt, and to buy slaves, strongly indicates, that if the circumstances should be such as to preclude any idea of benefit to him and his family, that the trustees were not to be bound to sell for such purpose; and surely there is nothing to indicate that if John should elect not to

have the benefit of this testamentary permission, but to let the property remain as previously devised, that the trustees over his protestations should sell and pay his debts.

The testator was one of the distinguished lawyers of his day. Had he intended to set aside a sum to pay his son's debts absolutely, he would have specified it as one of the trusts to be unequivocally executed by his trustees; but having devised it unequivocally to his son for life, and then to his children, he intended the children should be deprived of their fee only on condition that his trustees and son should approve of it, and certainly not without the approval of his trustees.

When John's portion shall be allotted, the trustees hold it in trust for John during his life, remainder in fee to his children; and such is the express trust and character of the holding, unless the trustees should determine to sell not exceeding ten thousand dollars' worth to pay John's creditors and buy slaves; and in this permission no criterion but their own assent is indicated of how much of this fund is to be paid to creditors, or how much laid out in servants; and this, too, strongly indicates that the judgment and approval of the trustees to any change in the character of the property devised was the controlling consideration with the testator; and leaving it thus merely permissive with the trustees, the testator could hardly contemplate that they would arbitrarily exercise the power over the protestation of his son and to the detriment of his grandchildren.

It may be fairly presumed that the testator intended to vest the trustees with the power to sell $10,000 worth of this real estate absolutely, if they found that a reasonable portion would exonerate John from debt, and the situation of his family be such as to require an outlay in servants. It was not contemplated that all this fund should be consumed in the payment of debts; hence the judgment and approbation of the trustees in the conversion of the property was made essential; and this is made the more imposing by the total absence of any express right given to John to have this enforced, should the trustees decline to do it.

This permissive power in the trustees, if exercised, would be in conflict with the previous express and unequivocal trusts to that extent, and, therefore, was made permissive rather than directory by the testator, who well understood what he was doing.

John Rowan, jr., in his lifetime, having elected, so far as he was concerned, to hold under the previous devise, and objecting to a conversion of any part of the real estate, and the trustees never having assented to such sale and conversion, the chancellor very properly refused to compel them to do so, or to order and adjudge that any part of the estate so held in trust should be sold to pay any portion of his indebtedness after he had died.

Judgment affirmed.

[The CHIEF JUSTICE did not sit in this case.]